2013-1356

---

United States Court of Appeals for the Federal Circuit

---

DECKERS CORPORATION,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

---

Appeal from the United States Court of International Trade in
Case No. 02-CV-00732,
Senior Judge Thomas J. Aquilino, Jr.

---

**REPLY BRIEF FOR APPELLANT DECKERS CORPORATION**

---

RODE & QUALEY
*Attorneys for Plaintiff-Appellant*
55 West 39th Street
New York, New York 10018
(212) 944-7333

Patrick D. Gill
*Attorney of Record*
William J. Maloney
R. Brian Burke
*Of Counsel*

Dated: December 31, 2013

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT………………………………….……………...1

ARGUMENT……...……..……………………………………….……………....3

I   THE GOVERNMENT HAS FAILED TO SHOW THAT *DECKERS I*
IS *STARE DECISIS* OF THE ISSUES PRESENTED IN THIS
CASE………………………………………………….…………………....3

    A.   The *Deckers I* Court did not determine whether these sport
sandals were training shoes per se and, therefore, the decision
can be given no preclusive effect on that issue………………………3

    B.   *Deckers I* is both legally and factually distinguishable from
this case so as to preclude *stare decisis*………………….…..……….6

II   IF THE HOLDING IN *DECKERS I* WAS THAT ONLY SHOES
WITH FULLY ENCLOSED UPPERS CAN BE CLASSIFIED IN
TARIFF HEADING 6404.11.80 AND 6404.11.90, THEN THAT
DECISION WAS CLEARLY ERRONEOUS……………………………..12

    A.   The *Ejusdem Generis* canon of construction cannot be used
to limit the plain meaning of an *eo nomine* tariff provision……….. 12

    B.   If the holding in *Deckers I* was that training shoes must have
fully-enclosed uppers, then the decision involved clearly
erroneous findings of fact……………………………………….…..16

    C.   The government brief fails to address Deckers' argument
that if the holding in *Deckers I* was that only footwear with
a fully-enclosed upper can be classified under the *eo nomine*
provision for "training shoes," then that holding is clearly
erroneous because it conflicts with black letter Customs law
that such designations cover all forms of the named article
including new or improved versions of the named article……...……20

D.      The trial court erred in not considering the new evidence
        adduced by Deckers in this case in order to establish
        whether the decision in *Deckers I* was clearly erroneous,
        as required by this Court's decision in *Schott Optical*...…………... 21


CONCLUSION……………………………………………………...……27

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Avenues in Leather, Inc. v. United States*,
   423 F.3d 1326 (Fed. Cir. 2005) ..................................................... 22,23

*Corning Glass Works v. United States,*
   448 F. Supp. 262 (Cust. Ct. 1977) *rev'd,*
   *other grounds,* 586 F.2d 822 (CCPA 1978) ........................................9

*Deckers Corporation v. United States*,
   532 F.3d 1312 (Fed. Cir. 2008) ........................................ ….passim

*Generra Sportswear, Inc. v. United States*,
   16 CIT 313 (1992) ................................................................6

*H. W. Robinson Air Freight Corp. v. United States,*
   48 CCPA 148 (1961) ................................................... 15, 16, 24

*Kimberly-Clark Corp. v. Ft. Howard Paper Co*.,
   772 F.2d 860 (Fed. Cir. 1985) ...............................................22

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc*.,
   723 F.2d 1566 (Fed. Cir. 1983) ...........................................3, 4

*Neco Electrical Products v. United States*,
   14 CIT 181 (1990) ..............................................................12

*Neumann-Endler, Inc. v. United States*,
   27 CCPA 53 (1939) ...............................................................9

*Outer Circle Products v. United States*,
   590 F.3d 1323 (Fed. Cir. 2010) ................................. 12, 13, 14

*Sandoz Chem. Works, Inc. v. United States*,
    50 CCPA 31 (1963) ........................................................................12


*Schott Optical Glass, Inc. v. United States,*
    750 F.2d 62 (Fed. Cir. 1984) .................................... 2, 21, 22, 23, 24, 26


*Tate Access Floors v. Interface Architectural Res.,*
    279 F.3d 1357 (Fed. Cir. 2002) ...........................................22


*United States v. Damrak Trading Co., Inc.,*
    43 CCPA 77 (1956) ................................................... 14, 15, 16


*United States v. Stone & Downer Co,*
    274 U.S. 225 (1927) ............................................. 2, 5, 7, 8, 12, 17, 22


*Vas-Cath Inc. v. Sakharam D. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) ...........................................22


*Wilton Industries, Inc. v. United States*,
    Appeal No. 2013-1028 at 7 (November 5, 2013),..............................26

## STATUTORY PROVISIONS

Tariff Act of 1930 (T.D. 51802)
    Paragraph 1021……………………………………………………...... 15, 16


Harmonized Tariff Schedule of the United States
    Heading 6404.11…………………………...…………1, 6, 8, 10, 12, 21, 25, 26, 27
    Subheading 6404.11.80……………………………………....…1, 2, 12, 16, 21, 25
                6404.11.90…………………………………………….……12, 17, 21

    Heading 6404.19…….........................................................................21

## **TREASURY DECISIONS**

T.D. 93-88 ................................................................................................................18

## **MISCELLANEOUS**

*Restatement 2d of Judgments*
  Section 27 (1980)…………..…………………………………………….4, 5

*Practitioner Commentary: A Discussion of 2009 and 2010 Cases Decided Under*
  *the United States Court of International Trade's 28 U.S.C. § 1581(a)*
  *Jurisdiction*, Hadfield and Simpson, 43 Geo. J. Int'l L. 107, 138 (2011) ............14

*Moore's Federal Practice*, ¶134.02[2] (3d ed. 2009)……………….….…..…….22

## <u>SUMMARY OF ARGUMENT</u>

The sum and substance of the government argument is that by virtue of this Court's decision in *Deckers Corporation v. United States*, 532 F.3d 1312 (Fed. Cir. 2008) (*Deckers I*) subheading 6404.11.80, HTSUS, "is limited to shoes with enclosed uppers." Red Brief 6.   The government argues that the imported sports sandals cannot be classified under subheading 6404.11, HTSUS, "because the sandals are not a named exemplar and are not *ejusdem generis* with the named exemplars as they indisputably do not have enclosed uppers." *Id*.

Deckers' response to this government argument is that there was no explicit holding in *Deckers I* that all "training shoes" must have an "enclosed upper" and the attempt by the government in this case to implicitly graft such a requirement onto the *Deckers I* holding must fail because it would cause the decision to conflict with the bedrock principles of tariff classification that:  (1) *eo nomine* tariff designations include all forms of the named article, and (2) tariff terms are written for the future so as to include improved forms of the named article.

The decision in *Deckers I* can and should have been distinguished from the present case by the trial court because of the different factual record developed in this case and because of the different *eo nomine* classification argument presented here.  That approach would have been consistent with the

long-standing rule, first set forth by the Supreme Court in *United States v. Stone &
Downer Co,* 274 U.S. 225 (1927)*,* that the doctrine of *res judicata* does not apply
in Customs classification cases and that the importer in a classification case can
present new evidence and relitigate both legal and factual issues in a case involving
subsequent importations of the same type of merchandise.  Blue Brief 9-10.

Alternatively, in accordance with this Court's decision in *Schott
Optical Glass, Inc. v. United States,* 750 F.2d 62 (Fed. Cir. 1984), the trial court
should have at least reviewed the new evidence adduced in this case and
considered Deckers argument that if *Deckers I* cannot be distinguished but can
only be viewed as holding that the common meaning of each named exemplar in
HTSUS subheading 6404.11.80 is limited to only include footwear with a "fully-
enclosed upper," then that decision falls within the "clearly erroneous" exception
to the doctrine of *stare decisis.*  Blue Brief 19-20.

The government brief refutes neither of these arguments.  Because the
lower court granted the government's motion for summary judgment without
considering or discussing the  new and unrefuted evidence presented in this case
that the imported sports sandals are designed, sold and used as training shoes, the
decision below should be reversed, or reversed and remanded with instructions that
Deckers is entitled to a finding as to whether its sports sandals fall within the
common meaning of the term "training shoes" based upon the new evidence

2

adduced in the depositions and affidavits already submitted or at trial. Alternatively, the decision of the trial court should be reversed with instructions to make a finding with respect to whether the holding of this Court in *Deckers I* is clearly erroneous in light of new evidence presented in this case.

## ARGUMENT

### I

### THE GOVERNMENT HAS FAILED TO SHOW THAT *DECKERS I* IS *STARE DECISIS* OF THE ISSUES PRESENTED IN THIS CASE.

**A. The *Deckers I* Court did not determine whether these sport sandals were training shoes per se and, therefore, the decision can be given no preclusive effect on that issue.**

The government argues that the Court in *Deckers I* must be presumed to have already ruled that the sports sandals were not training shoes because of statements that the sports sandals were training shoes in Deckers briefs submitted in that case. Red Brief 18-19. However, the mere fact this training shoe issue was raised in a brief does not establish that the Federal Circuit decided the issue, and in order to be given the preclusive effect that the government seeks, the issue of whether the sport sandals are training shoes *per se* must have been "actually litigated" in *Deckers I* , as this is one of the requirements for issue preclusion. See, *Mother's Restaurant, Inc. v. Mama's Pizza, Inc*., 723 F.2d 1566, 1570 (Fed. Cir.

1983).  Section 27 of the *Restatement 2d of Judgments* (1980) defines the "actually litigated" requirement:

> The term "actually litigated" is defined as follows:    When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, **and is determined**, the issue is actually litigated within the meaning of this Section (emphasis supplied).

In *Deckers I* the Court did not have the benefit of either a fully developed record that the sports sandals were designed, marketed and used as training shoes, or of a fully developed argument with respect to black-letter law on the scope of an *eo nomine* tariff provision.  The decision in *Deckers I* itself refutes the government's argument that it should be presumed the *Deckers I* Court considered and rejected the *eo nomine* argument (Red Brief 18-19) because the Court explicitly based its decision on a different, *ejusdem generis* analysis and never mentioned the scope of the term "training shoes," much less explained why the sports sandals were not a form of training shoe.  The *Deckers I* court was explicit in identifying the issues considered on the appeal.  Those issues were stated to be: (1) the interpretation of Additional Note 2, (2) the application of the rule of *ejusdem generis* and (3) Deckers' argument that the Court's analysis of the Teva® Sports Sandals as not being "shoes" is incorrect.  *Deckers I*, 532 F.3d at 1315.  By specifically delineating and deciding those issues, the Federal Circuit made clear in *Deckers I* that it did not determine the "training shoe *per se*" claim.  Therefore, that claim

4

was not "actually litigated" within the meaning of the Restatement of Judgments and can be given no preclusive effect here.

Finally, even if the trial court did presume that this Court in *Deckers I* had considered and rejected the training shoe argument, that would still not render the case *stare decisis* so as to preclude consideration of new evidence on the issue that could support new findings of fact not governed by *stare decisis*. In accordance with the fundamental principles set forth in *United States* v. *Stone & Downer Co.*, *supra*, the trial court should still have reviewed the new evidence elicited by the government in its own depositions which established, without contradiction, that the sports sandals are training shoes, *per se.* If the court concluded that the training shoe claim raised disputed factual issues, then it should have denied both cross-motions for summary judgment and afforded Deckers an opportunity to adduce the new evidence at trial.[1]

---

[1] The fact that this action was previously suspended under *Deckers I* pursuant to CIT Rule 84 does not limit Deckers' ability to retry the action under *Stone & Downer*. As explained by the CIT:

> For actions involving a common question of law or fact, the test case/suspension procedure is an available alternative to procedures permitting consolidation of actions under USCIT R. 42(a)…. The two procedures, however, differ in several material respects. With consolidation, the various actions with the common question of law or fact are merged into a single consolidated action. Thus, the final decision in the consolidated action has binding legal effect on all of the merged actions. **On the other hand, in the test case/suspension**

**B. *Deckers I* is both legally and factually distinguishable from this case so as to preclude *stare decisis*.**

*Deckers I* was decided on the factual record developed in that case. Deckers developed that record to support its primary argument that the sports sandals were "athletic footwear" and thus were properly classified in subheading 6404.11 by virtue of U.S. Additional Note 2 of Chapter 64. Deckers' position in that case was that Note 2 defined the statutory term "tennis shoes, basketball shoes, gym shoes, training shoes and the like" requiring only proof of the footwear's athletic character. The trial court held that Deckers had proved that the footwear was athletic. However, the court disagreed that Note 2 defined the statutory term in issue and instead applied an *ejusdem generis* analysis using the evidentiary

---

procedure, the test case and the suspended actions maintain their separate identities. The result is that the final decision in the test case is not necessarily legally binding on the suspended actions. (Emphasis supplied) *Generra Sportswear, Inc. v. United States*, 16 CIT 313, 314 (1992).

The government argues that the representation made in the *Deckers I* test case designation as to the common legal and factual issues between this case and *Deckers I* was part of the basis for the trial court's holding in this action. Red Brief 5. While the trial court makes a cryptic reference to the test case motion in its decision (Blue Brief, Addendum 10), the reference appears to be related to showing that the merchandise in both cases is the same type rather than a basis for the holding.

record that was developed simply to prove that the sandals were athletic footwear and not that they were any of the named types.

Deckers believes that *Deckers I* was not just wrongly decided with respect to whether its sports sandals were "like" the other named exemplars, but that any implicit determination that the sports sandals were not a form of the named article, "training shoes," would be a "clearly erroneous" application of the *ejusdem generis* rule of construction so as to unduly restrict the scope of that *eo nomine* tariff term, in contravention of well-established principles of Customs jurisprudence. Therefore, Deckers brings this case in accordance with the longstanding principle, originally set forth by the Supreme Court in *United States v. Stone & Downer*, *supra*, that the doctrine of *res judicata* is inapplicable to tariff classification cases. Deckers has made a new factual record based upon the depositions of four of its proposed trial witnesses and upon two affidavits from those witnesses that counter the affidavit submitted by a proposed government witness. The legal issue presented here is whether the common meaning of the *eo nomine* tariff provision for "training shoes" includes all forms of shoes that have been designed, sold and used for athletic training purposes, including improved forms of such shoes that may not have been known at the time the tariff provision was originally enacted. The factual issue presented is whether the sports sandals before the court in this case were, in fact, designed, marketed, and used for

purposes of athletic training, such as running or jogging, so as to fall within the common meaning of "training shoes" as that *eo nomine* tariff term is properly construed. These are not the same legal and factual issues that were decided by this Court in *Deckers I*.

In order to find that the sport sandals are a form of the named article, "training shoes," the Court need not explicitly overrule *Deckers I*, as the government argues it must, but lacks the power to do. Red Brief 9, 13-16. Instead, *Deckers I* can be distinguished based upon the different legal issue presented here (whether the sports sandals are a form of the named article "training shoes") and *Deckers I* can be limited to the factual record before the Court in that case, in accordance with the admonition of the Supreme Court in *Stone & Downer* that, in the area of tariff classification, "The evidence which may be presented in one case may be much varied in the next." *Stone & Downer* at 235-236.

The government argues: "Deckers **cannot** relitigate or collaterally attack the interpretation of subheading 6404.11, HTSUS, contained in *Deckers I* as that decision is *stare decisis* on that issue." Red Brief 9. (emphasis in original). This argument begs the question of what the government means by, "the interpretation of subheading 6404.11, HTSUS, contained in *Deckers I*." While the meaning of a tariff term is a question of law, there can be different questions of law involved in establishing the scope of a tariff provision because a tariff provision,

like the one in issue here, can contain several different terms and the meaning of each such term can present a different legal issue. However, the principal of *stare decisis* only applies to prior holdings on the same legal issue. *Neumann-Endler, Inc. v. United States*, 27 CCPA 53 (1939); *Corning Glass Works v. United States,* 448 F. Supp. 262 (Cust. Ct. 1977*); rev'd, other grounds*, 586 F.2d 822 (CCPA 1978).

The *Corning Glass Works* case illustrates the point. There the importer argued that an ampule inspection machine was properly classified under a basket tariff provision covering other machines not specially provided for, rather than under a specific tariff provision covering optical measuring and checking machines. In a prior decision, the same type of machine had been classified as an optical measuring machine and the government argued that the prior case was *stare decisis* on the proper classification of the same machine. The Court, however, held that *stare decisis* did not apply because in the prior case the importer had conceded that the machine was a "checking" machine and had only contested whether it was an "optical" machine. Since the new case argued that the machine was not a "checking" machine, based on an *ejusdem generis* analysis, the Court held that the question of law presented was not the same as the question presented in the prior decision, **even though both cases involved the classification of the same machine under the same tariff provision**. While the CCPA reversed the

9

Customs Court holding that the machine was classified under the basket provision, it did so on the grounds that the Customs Court had misapplied the doctrine of *ejusdem generis,* so as to exclude the machine from the specific provision*,* not on the grounds that the prior classification decision was *stare decisis.*

In *Deckers I*, after rejecting Deckers' argument that the scope of HTSUS subheading 6404.11 was defined by U.S. Additional Note 2 of Chapter 64, the Court stated: "Our inquiry therefore calls for us to assess whether the Teva Sandals are 'the like,' i.e., whether the imported goods are like tennis shoes, basketball shoes, gym shoes and training shoes." *Deckers I, supra* at 1316. The government argues that this inquiry is no different than determining whether the sport sandals in issue are training shoes, per se, because: "Nothing would be more "like" a training shoe than a training shoe." Red Brief 18. That facile argument, however, ignores the important differences between the *ejusdem generis* analysis of a tariff provision like that undertaken in *Deckers I*, and the *eo nomine* analysis of a tariff term called for by this case.

The central inquiry in an *ejusdem generis* analysis of a tariff provision is to identify the essential characteristic that unites a list of different tariff terms in order to determine whether a particular article shares that characteristic so as to be "like" the other articles on the list. In contrast, the central inquiry in an *eo nomine* analysis of a tariff provision is to identify the common meaning of a particular

10

tariff term that identifies an article "by name" while bearing in mind that such provisions include all forms of the named article and are written for the future so as to include improved forms of the article that may not have existed at the time the provision was originally enacted.  Blue Brief 31-40.

Because the two ways of analyzing a tariff provision are different, the facts considered important and the weight given those facts will also be different. For example, while it is crucial under an *ejusdem generis* analysis to determine an essential characteristic, typically as in this case related to use, shared by all the named exemplars in a tariff provision, whether or not any such shared characteristic even exists is irrelevant to an *eo nomine* analysis of any given exemplar.  Therefore, the fact that the design features in a sports sandal claimed to be a training shoe may differ from such features commonly found in other named exemplars of the tariff provision, such as a basketball or a tennis shoe, is of no consequence under an *eo nomine* analysis so long as it can be shown that the shoe is designed, sold and used in a way that makes it a form of the named article, i.e. for athletic training.  However, such differences could be determinative under an *ejusdem generis* analysis where a shared essential characteristic common to all the named exemplars is required.

In summary, it is one thing to conclude, as the Court did in *Deckers I*, that the sport sandals were not "like" the named exemplars in HTSUS subheading

11

6404.11 under an *ejusdem generis* analysis because they lacked the essential characteristic of the enumerated articles based upon the court's interpretation of the evidence adduced at trial in that case.   It is quite a different thing to say that the sport sandals before the Court in this case are not a form of "training shoe" as that tariff term is commonly and commercially used where there is overwhelming evidence here that the sport sandals were designed, sold and actually used for purposes of athletic training.   The applicable law here is the rule in *Stone & Downer, supra*, not *stare decisis*.

II

**IF THE HOLDING IN *DECKERS I* WAS THAT ONLY SHOES WITH FULLY ENCLOSED UPPERS CAN BE CLASSIFIED IN TARIFF HEADING 6404.11.80 AND 6404.11.90, THEN THAT DECISION WAS CLEARLY ERRONEOUS.**

**A.  The *Ejusdem Generis* canon of construction cannot be used to limit the plain meaning of an *eo nomine* tariff provision.**

There is a long line of cases holding that the *ejusdem generis* canon of statutory construction is not to be invoked to restrict or limit the clear language of a tariff provision.   *Sandoz Chem. Works, Inc. v. United States*, 50 CCPA 31, 35 (1963); *Neco Electrical Products v. United States*, 14 CIT 181, 190 (1990). Nevertheless, the Government cites the decision in *Outer Circle Products v. United States*, 590 F.3d 1323 (Fed. Cir. 2010) as illustrating how, "*ejusdem generis* can

inform or even limit the scope of the common meaning of an *eo nomine* term in a tariff provision...."  Red Brief 10.  In fact, however, in that case the government never presented the Court with evidence that the bottle wraps in issue had been designed, marketed and used as "bottle cases" so as to fall within the scope of the *eo nomine* designation.  Instead, the government argued, and the trial court agreed, that in their condition as imported the bottle wraps were only capable of containing a bottle, rather than a beverage (since the bottle was added after importation) and, therefore, that they were described *eo nomine* as "bottle cases."  This Court, however, stated (590 F.3d at 1326):

> This distinction [between the bottle wraps at issue in *Outer Circle* and the merchandise at issue in *SGI*] strains logic, and is unsupported by record evidence.  The containers in *SGI*, like the articles here, were not designed to hold uncontained food or beverage.  This is true even without the bottle or jug being inserted into the wraps, that is, at the time of importation.  Therefore the [trial] court's determination that the utility of the bottle wraps, "as insulated beverage containers arises only after the containers are mated to the requisite bottle or jug" is incorrect.  *Outer Circle*, 602 F. Supp. 2d at 1308.

This Court found that the only commercial use of the wraps was to contain a beverage after a bottle had been inserted and that they were not simply a case for the bottle, but rather, were designed and used as a container for a beverage, since the only purpose of the insulation was to cool a beverage.  Commentators consider *Outer Circle* an example of "where the CIT's decision was

13

at odds with the commercial reality and use of the products at issue, the CAFC reversed the CIT's decision." *Practitioner Commentary: A Discussion of 2009 and 2010 Cases Decided Under the United States Court of International Trade's 28 U.S.C. § 1581(a) Jurisdiction*, Hadfield and Simpson, 43 Geo. J. Int'l L. 107, 138 (2011).   In that respect the *Outer Circle* decision actually supports Deckers' argument here that these sport sandals must not be classified based upon the presence or absence of any particular feature such as a bottle or a fully-enclosed upper, but rather, upon whether the evidence shows that they have been designed, sold and are used as a beverage container or as training shoes.

Also, the Government here argues that *Outer Circle* supports its position that *Deckers I* is *stare decisis* in this case, but fails to cite that portion of the decision where this Court states, "While it is true that the classification of the soft-sided cooler bags in *SGI* is **not** *stare decisis* to the classification of the articles in this case, we see no factual distinction between the coolers in *SGI* and these articles."   *Outer Circle*, at 1326 (emphasis supplied).   Therefore the holding in *Outer Circle* was explicitly **not** based upon the rule of *stare decisis*.

The government also cites the CCPA decision in *United States v. Damrak Trading Co., Inc.*, 43 CCPA 77 (1956), as an example of how the court can use an *ejusdem generis* analysis to "inform the meaning" of an *eo nomine* provision.   Red Brief 16 n.5.   In *Damrak Trading* the court held that certain rubber

floor mats were classified under Paragraph 1537(b) of the Tariff Act of 1930, covering "manufactures of rubber" rather than under the n.s.p.f. provision of Paragraph 1021 as modified by the GATT, T.D. 51802. Paragraph 1021 covered:

| Carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof | 17 ½% ad val. |
| --- | --- |
| All other floor coverings not specially provided for: | |
| Felt-base | 12 ½% ad val. |
| Other | 20% ad val. |

The *Damrak* Court held that an *ejusdem generis* analysis of the words, "wholly or in chief value of flax, hemp, or jute, or a mixture thereof" at the beginning of the Paragraph, informed the meaning of "All other floor coverings not specially provided for" by limiting the n.s.p.f. provision to floor coverings that were similar to these named exemplars in texture and in material. *Damrak*, *supra* at 81. Although the government cites this holding with approval in its brief, the decision was **overruled** by the CCPA in *H. W. Robinson Air Freight Corp. v. United States*, 48 CCPA 148 (1961). The *Robinson* court states:

> "The public policy of putting an end to litigation and of not reopening questions which have been decided is a sound one, subject only to the qualification that clear error should not be perpetuated." *United States v. Mercantil Distribuidora, et al.*, 45 CCPA 20, 23-24, C.A.D. 667. A former holding should not be disturbed in the absence of a convincing showing of error. [string citation omitted]. While we are reluctant to

15

depart from precedent, here a convincing showing of clear error has been made and the salutary principle of stare decisis we think does not provide a sufficient reason for perpetuating the error.

Therefore, we expressly overrule the holding and decline to apply the dictum in *United States v. Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611, and *United States v. J. L. Hudson Co.*, 23 CCPA 313, T.D. 48177, that the n.s.p.f. provision of paragraph 1021 of the Tariff Act of 1930 is limited by the doctrine of ejusdem generis to floor coverings wholly or in chief value of flax, hemp, or jute or a mixture thereof.

We agree with the reasoning of the court below in suggesting that the precedents of this court were erroneous. However, being bound by these precedents, the court reached a decision which is contrary to its reasoning and to the views here expressed. For these reasons we reverse the decision of the Customs Court. 48 CCPA at 152-153.

Therefore, contrary to the government argument, the *Damrak* holding stands as testament to the clear error that can result from employing an *ejusdem generis* analysis to "inform" (i.e. "limit") the plain meaning of an *eo nomine* provision.

**B. If the holding in *Deckers I* was that training shoes must have fully-enclosed uppers, then the decision involved clearly erroneous findings of fact.**

In *Deckers I*, the trial court ruled that the Teva® Sports Sandals can be used in conditions involving weather and moisture and that fact made them superior to other training shoes. *Deckers I*, 414 F. Supp. 2d at 1254-1255. This Court made much of this factual finding, concluding that "the named exemplars in subheading 6404.11.80 are designed for activities that take place on the ground,

particularly dry surfaces" and that the Teva® Sports Sandals are primarily marketed for water activities." *Deckers I*, 532 F.3d at 1317. This was a clearly erroneous factual finding by the appellate court. As admitted by the government in response to Statement of Material Fact 94 (A 48), Customs classifies waterproof textile upper running shoes as "tennis shoes, basketball shoes, gym shoes, training shoes and the like." Likewise snow joggers are admittedly classifiable in the same provision. See, Statement of Material Fact 95 (A 48). See especially, Exhibit 40 to Deckers' Statement of Material Facts (A 473 - 479). Therein Customs held that aquatic training shoes, which were used in water or aqua aerobics, are properly classifiable in subheading 6404.11.90, HTSUS. Thus, this Court's reliance on the government's argument that the Teva® Sports Sandals are primarily marketed for water activities in contrast to the named exemplars that "are designed for activities that take place on the ground or typically dry surfaces" was erroneous and contrary to the rulings by Customs and Border Protection that aquatic shoes, used exclusively in water, are still within the scope of the claimed provision.[2]

One purpose of the rule in *Stone & Downer* is to afford an importer an opportunity to correct erroneous fact finding through the submission of new

---

[2] With regard to the use of the Teva® Sports Sandals on the ground or typically dry surfaces, see paragraph 9 of Chris Hillyer's Declaration which is attached as Exhibit 41 hereto (A 484) describing his use of the Terra Fi in a road race and the use of Trail Wraptor in a 135 mile running race in the Mojave Desert.

evidence, which is what Deckers has done in this case. That its sport sandals are particularly well-suited to use as training shoes is overwhelmingly established by Deckers' Statement of Material Facts, most of which are admitted and all of which are uncontradicted. As conceded in the government's response to Deckers' Statement of Material Fact 74, Customs own footwear definitions in T.D. 93-88 equate training shoes with joggers. A. 44. This fact raises the obvious question of why the government refused to classify the joggers at issue in this case, styles 6650 and 6648, as training shoes.

The government never cites any record evidence in this case to support its view that training shoes must have fully-enclosed uppers and ignores the 398 pages of deposition testimony (portions of which are included in the Appendix) which it elicited from athletes and footwear industry executives who are deeply involved in the footwear industry establishing that the sandals in issue are used by other athletes and by themselves as training shoes. A 50 – 352. The government admitted most of the salient facts that support Deckers' contention that the imported articles are training shoes, supplementing its admissions in its response with argumentation and objections to those uncontradicted facts. See the government's response to Deckers' Statement of Material Facts, ¶¶64, 66, 67, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 83, 85, 86, 87, 88, 91, 92, 93, 94, 95, 98, 99 and 100. A 42 - 48.

18

The government also ignores the factual findings of the trial court in *Deckers I* that were amplified and bolstered by the deposition testimony in this case which establish that the sports sandals are training shoes. Those findings were that the Teva® Sports Sandals are sold as athletic footwear, are used for sporting and athletic purposes, are conducive to fast footwork associated with athletic activities, are commonly referred to by the footwear industry and consumers as sports sandals or athletic sandals, and are recognized as athletic footwear by the footwear industry. *Deckers I*, 414 F. Supp. 2d at 1254-1255.

The government ignores the factual finding by the trial court in *Deckers I* that "prior to the invention of the sports sandal, wearers had no option but to use closed upper styled tennis shoes, basketball shoes, gym shoes, training shoes and other types of athletic footwear." *Id*. at 1371 (emphasis added). This factual finding clearly shows that the trial court in *Deckers I* was satisfied that the evidence presented in that case established that since the invention of the sports sandal, wearers could use sport sandals for the same purposes as the named exemplars. The trial court determined that the sports sandals were not "like" the named exemplars not because of any evidence they could not be so used, but only because it did not believe sandals were shoes.

The government ignores the factual findings that the sport sandals do not allow the wearer's foot to move and slide in a manner inconsistent with athletic

use, that they are used for running and jogging, that the design of the imported merchandise allows for quick and easy removal of any foreign matter that may be introduced while participating in athletic activities and that in certain conditions sports sandals are superior to closed upper styled tennis shoes, basketball shoes, gym shoes and training shoes. *Id*. Finally, the government ignores the trial court's finding that Teva® Sports Sandals <u>have features that are found in closed upper styled tennis shoes, basketball shoes, gym shoes and training shoes</u>. *Id*.

The government objects to or ignores all of the above facts which establish that the imported articles are training shoes and, instead, simply relies on the decision in *Deckers I* as *stare decisis* without addressing the erroneous factual underpinnings of *Deckers I* or explaining why that decision, in light of the record evidence developed in this case and the black letter customs law discussed in our Blue Brief, is not clearly erroneous.

**C.  The government brief fails to address Deckers' argument that if the holding in *Deckers I* was that only footwear with a fully-enclosed upper can be classified under the *eo nomine* provision for "training shoes," then that holding is clearly erroneous because it conflicts with black letter Customs law that such designations cover all forms of the named article including new or improved versions of the named article.**

In the Blue Brief Deckers sets forth the argument that eo nomine tariff provisions cover all forms of the named article and are written for the future so as to embrace any new or improved versions of the named article.  Blue Brief 31-40.

20

These concepts are bedrock principles of Customs jurisprudence. The government's complete failure to address this argument speaks volumes. The government fails to cite any legislative history or lexicographic, technical or industry authority which restricts the term "training shoes" to shoes with completely enclosed uppers. The government never proffers a statutory interpretation of subheadings 6404.11.80 and 6404.11.90, HTSUS, or Headnotes or Rules of Interpretation which support restricting the *eo nomine* provision in this fashion. It does not cite such authority because it cannot. All the government can do is to cite this Court's decision in *Deckers I,* and it does so without explaining why that decision is not so in conflict with these principles of tariff classification as to be clearly erroneous.[3]

### D. The trial court erred in not considering the new evidence adduced by Deckers in this case in order to establish whether the decision in *Deckers I* was clearly erroneous, as required by this Court's decision in *Schott Optical.*

To support its assertion of *stare decisis*, the government argues that a panel of the Federal Circuit is bound by prior panel decisions until they are

---

[3] The government concedes that the classification under HTSUS subheading 6404.11 advocated by Deckers would prevail over the basket classification in HTSUS 6404.19 found in *Deckers I* if the articles are described by both provisions. Red Brief 8. Nevertheless, the government continues to emphasize the "open toes and open heels" language that used at the 8-digit level of Heading 6404.19 (Red Brief, 2 note 1, 6) even though that language cannot increase the specificity of the

overturned *en banc* or by the Supreme Court, citing language to this effect from a trademark registration case, *Kimberly-Clark Corp. v. Ft. Howard Paper Co.*, 772 F.2d 860, 863 (Fed. Cir. 1985), two patent infringement cases, *Tate Access Floors v. Interface Architectural Res.,* 279 F.3d 1357, 1366 (Fed. Cir. 2002) and *Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555, 1563-1564 (Fed. Cir. 1991), and a Treatise, *Moore's Federal Practice*, ¶134.02[2] (3d ed. 2009). Red Brief 9-10. None of these citations are relevant to the issue presented by this Customs classification case because, as established above, this case is brought under the rule of *Stone & Downer, supra*, and raises distinct factual and legal issues. However, even if *stare decisis* could otherwise apply, the cited cases certainly provide no basis, as the government contends, for disregarding Deckers' alternative argument about the clearly erroneous exception to *stare decisis*. Red Brief 10.

The relevant decisions that are *stare decisis* until reversed *en banc* or by the Supreme Court are the Customs classification decisions cited in the Blue Brief, *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326 (Fed. Cir. 2005) and *Schott Optical Glass*. Those decisions make clear:

1) That the Supreme Court established in *Stone & Downer*, *supra*, that in Customs classification cases, "…a determination of fact or law with respect

---

word "Other" that appears at the 6-digit level. This practice only serves to create confusion as to the relative specificity of the two competing tariff provisions.

to one importation is not *res judicata* as to another importation of the same merchandise by the same parties.  **The opportunity to relitigate applies to questions of construction of the classifying statute as well as to questions of fact as to the merchandise."**  *Schott Optical, supra* at 64 (emphasis supplied).

2) That *stare decisis* deals only with questions of law and the determination of whether particular merchandise falls within the scope of a tariff provision is a question of fact.  *Avenues in Leather*, 423 F.3d at 1331.

3) That there is a well-recognized exception to *stare decisis*.  A court will reexamine and overrule a prior decision that was clearly erroneous and an importer must be given an opportunity to establish through additional evidence the clearly erroneous nature of a prior decision on an identical question of law.  *Schott Optical,* 750 F.2d at 64.

The government argues that *Schott Optical* does not extend the "clearly erroneous" exception to the doctrine of *stare decisis* to decisions of the appellate court, but only to decisions of the trial court.  Red Brief 10.  This argument is controverted by the facts of the case set forth by the Court.  The *Schott Optical* Court states:

> There was an earlier case between the same parties in which the courts upheld the Customs Service's classification as "optical glass" of colored filter glass imported by the appellant. In *Schott Optical Glass,*

23

*Inc. v. United States*, 82 Cust. Ct. 11, 468 F. Supp. 1318 (Cust. Ct.), **aff'd  612 F.2d 1283 (CCPA 1979) (*Schott I*)**, the Customs Court, on the basis of prior decisions, ruled that glass classified as optical glass under item 540.67 TSUS is presumed to be (a) very high quality, (b) used for optical instruments, and (c) capable of performing an optical function, 468 F. Supp. at 1322. It held that Schott failed to sustain its burden of proving that its glass did not come within the foregoing standards. **The Court of Customs and Patent Appeals affirmed, holding that the common meaning of optical glass [which governed its tariff classification] does not include the additional requirement [which Schott urged it did] that the glass have a specifically controlled refractive index of dispersion. 612 F.2d at 1286**. *Schott Optical*, 750 F.2d at 63 (emphasis supplied).

In *Schott II* the Federal Circuit held that under the clearly erroneous exception to *stare decisis*, the importer in a Customs classification case must be afforded the opportunity to challenge with new evidence the decision in *Schott I* on the common meaning of the tariff term, "optical glass" that had been affirmed by the appellate court.  Unlike the facts in the cases cited in the government's brief, the facts in *Schott I* and *Schott II* are very similar to those in this case.  They establish that in a Customs classification case, the clearly erroneous exception is not limited to trial court decisions on questions of law, but also includes previous decisions on the meaning of tariff terms by the appellate court as well.  *See also*, *H. W. Robinson, supra* at 153, where the CCPA overruled the holdings of prior panels found to be clearly erroneous misapplications of the *ejusdem generis* doctrine to a tariff provision covering all forms of the floor coverings at issue, including those not composed of certain named vegetable fibers.

24

The decision in *Deckers I* is clearly erroneous because the appellate court, faced with overwhelming evidence that the common meaning of the tariff term "shoe" includes a sandal, saved the trial court determination that a sandal was not a shoe from a finding of clear error by reinterpreting the trial court's *ejusdem generis* analysis from, "sandals are not 'like' all the other named exemplars because they are not shoes" to mean that the essential characteristic uniting all the named exemplars in subheading 6404.11 was a particular design feature, a "fully-enclosed upper." The Court focused on the one feature that the Teva® Sports Sandals lacked to one degree or another, and ignored all of the features that the trial court had found the sandals shared with the named exemplars and that made them forms of athletic footwear. By making that one, undefined[4] feature, the *sine qua non* for classification under any of the *eo nomine* terms found in subheading 6404.11.80, the *Deckers I* court violated black-letter customs classification law that

---

[4] There is record evidence in this case that many training shoes feature open mesh fabric uppers and samples of the models of sport sandals at issue illustrate that the uppers can vary significantly in the degree to which they enclose the foot. SMF 84. A 39, 203, 216, 238, 306. Therefore the *sine qua non* for classification as a "training shoe" in Heading 6404.11 according to the government's interpretation of *Deckers I* is not a simple test and could easily prove more difficult to administer than the test advocated by Deckers*, i.e.* whether the shoe was designed, sold and is used for purposes of athletic training.

an *eo nomine* provision covers *all* forms of the named article[5] including new or improved versions, and committed clear error.

In this case there is evidence that the trend in the design of modern training shoes is towards lighter shoes with more open uppers.  SMF 72, A. 37, 101, 302 – 303, 336, 345 – 347.  See also, Blue Brief, 27 – 28.  Therefore any reading of the holding in *Deckers I* to be that no shoe can be classified under subheading 6404.11 unless it has a "fully-enclosed upper" would render that holding clearly erroneous and an exception to *stare decisis*.  The trial court erred in not considering that evidence and not affording Deckers an opportunity to establish the clearly erroneous nature of the *Deckers I* decision, in accordance with *Schott Optical, supra*.

---

[5] This fundamental principle was recently reaffirmed by this Court.  See, *Wilton Industries, Inc. v. United States*, Appeal No. 2013-1028 at p.7 (November 5, 2013).

# **CONCLUSION**

For the reasons set forth above and in the Blue Brief, we respectfully submit that the trial court erred in granting the government's motion for summary judgment and denying Deckers' cross motion for summary judgment. The evidence shows the imported articles are training shoes as a matter of fact and fall within the common meaning of that term as used in subheading 6404.11 as a matter of law. The government's brief relies exclusively on the alleged preclusive effect of *Deckers I* and completely fails to refute Deckers' argument that either that decision must be distinguished as being based on a different legal theory and limited by its own factual record, or that the decision was clearly erroneous because up its flawed factual assumptions and because it is at odds with fundamental principles of Customs jurisprudence that an *eo nomine* designation includes all forms of an imported article that is described by name in a tariff provision and that tariff terms are written for the future and embrace new or improved versions of the named tariff items. In the final analysis, where the evidence establishes that the imported article is designed, sold and used as a training shoe, it was clear error to classify the training shoe under a basket provision rather than under the specific *eo nomine* designation of subheading 6404.11.

The judgment of the Court of International Trade should be reversed, or, alternatively, the decision should be reversed and the case remanded with instructions to review the new evidence presented by Deckers and to make a definitive factual determination as to whether the imported articles are training shoes and/or a determination that the decision in *Deckers I* was clearly erroneous.

Respectfully submitted,

RODE & QUALEY
Attorneys for Plaintiff-Appellant
55 West 39th Street
New York, New York 10018
(212) 944-7333


*/Signed/ Patrick D. Gill*

*Of Counsel*
William J. Maloney
R. Brian Burke

28

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 31 day of December, 2013, I caused the

Reply Brief of Appellant to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Marcella Powell, Esq.
Civil Division, United States Department of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9230 or (212) 264-1873

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Reply Brief of Appellant will be

hand filed at the Offices of the Clerk, United States Court of Appeals for the

Federal Circuit in accordance with the Federal Circuit Rules.

*/s/ Patrick D. Gill*
Counsel for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

      The reply brief contains 6,416 words, excluding the parts of the reply brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),

2.      This reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

      The reply brief has been prepared in a proportionally spaced typeface using **<u>Microsoft Office Word 2007</u>** in **<u>14 font size Times New Roman</u>**.

☐

_____ */s/ Patrick D. Gill* _____
Patrick D. Gill

Representing appellant

_____ December 31, 2013 _____
(Date)
